2026 IL App (1st) 241238

FIFTH DIVISION
April 3, 2026

No. 1-24-1238

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| KENWOOD-OAKLAND COMMUNITY ORGANIZATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 08236 |
| | ) | |
| THE DEPARTMENT OF HUMAN SERVICES, and | ) | The Honorable |
| DULCE QUINTERO, Secretary of Human Services, | ) | Michael T. Mullen, |
| | ) | Judge, Presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Wilson concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff Kenwood-Oakland Community Organization (KOCO) appeals from an order of

the circuit court of Cook County, which affirmed the final decision of the Secretary of the

Illinois Department of Human Services (IDHS) in favor of defendant IDHS regarding the

recovery of grant funds paid to plaintiff for fiscal years 2012 through 2015. The administrative

law judge (ALJ) who presided over the hearing for the IDHS Bureau of Hearings (BOH)

determined that KOCO failed to establish by a preponderance of the evidence that the March 14, 2019, decision of the IDHS Bureau of Community Support Services (BCSS) to recover funds paid to KOCO pursuant to contracts and grants from the Family and Community Services division (FCS) of IDHS was incorrect, and the Secretary accepted that determination.

¶ 2      On appeal, KOCO contends that absent a finding that grant funds were misspent or unlawfully withheld, there can be no liability under the Illinois Grant Funds Recovery Act (Act) ) (30 ILCS 705/1 *et seq.* (West 2022). In support of this argument, KOCO contends that (1) there was no affirmative evidence that KOCO was liable under the Act, and it has offered sufficient evidence to rebut the statutory presumption in favor of recovery resulting from deficient records; (2) IDHS denied KOCO due process by switching its basis for recovery from the informal notice to the formal notice and by failing to produce or put in evidence the basis for the formal recovery; (3) IDHS failed to follow its own rules and provide KOCO the opportunity to correct its recordkeeping instead of being hit with what amounts to a punitive judgment for recordkeeping lapses; and (4) the circuit court erred in entering judgment against KOCO and in favor of IDHS for $451,198 where there is no amount justified by the record. For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4                                    A. Administrative Hearing

¶ 5      The ALJ, Michael J. Dickman, issued his recommendations and report in a 69-page written decision on July 19, 2022, after a hearing that took place over several days: October 14, October 20, October 26, November 10, and December 1, 2021, and February 10, 2022. The hearing took place via a recorded Cisco Webex conference and included examination of the documents admitted into evidence. KOCO was represented by private counsel, and IDHS was

represented by its general counsel. The evidence presented at the hearing, including witness testimony, is taken from the ALJ's recommended decision.[1]

¶ 6                                  1. KOCO's IDHS Grant Agreements

¶ 7        On January 27, 2012, KOCO entered into a community services grant agreement, contract No. 011GQ02163, with IDHS for fiscal year 2012 (FY 2012). Under the terms of the contract, KOCO was slated to receive an initial grant of $22,059 to establish and implement services for participating youth through the IDHS Human Capital Development and the Illinois Violence Prevention Authority (IVPA) Special Project After School Mentoring Program and in fact did receive those funds. In fiscal year 2013 (FY 2013), KOCO received an additional $52,941 in IVPA grant funds for operating the IVPA Special Project After School Mentoring Program. Thus, KOCO received IDHS grant funds totaling $75,000 during FY 2012 and FY 2013 for operating the IVPA Special Project After School Mentoring Program, under contract No. 011GQ02163.

¶ 8        Additionally, for FY 2013, on May 15 and June 14, 2013, KOCO entered into a FCS agreement contract and subsequent amendment with IDHS, contract No. FCSRR03078. Under the terms of that contract, KOCO was slated to receive grant funds up to $28,776.47 from IDHS. The purpose of the grant was to establish and implement services for participating youth through the IDHS FCS Teen REACH Summer Youth Jobs Program. The contract was subsequently amended, and the grant was reduced to $10,000, which was the amount KOCO received.

---

[1]KOCO has not included any other report of proceedings or certified bystander's report from the administrative hearing.

¶ 9    For fiscal year 2014 (FY 2014), KOCO entered into a FCS agreement contract and subsequent amendments with IDHS, contract No. FCCSRO3240, on June 17, July 1, and July 11, 2013. Under the terms of the contract and amendments, KOCO was slated to receive grant funds up to $210,843.47 from IDHS. The purpose of this grant was to establish and implement services for participating youth through the IDHS Community Youth Summer Jobs Employment, IVPA Teen REACH, and Temporary Assistance to Needy Family (TANF) programs. KOCO received the full grant amount under contract No. FCCSRO3240 and its amendments.

¶ 10    On June 30, 2014, KOCO entered into FCS agreement contract No. FCSTRO3681 with IDHS for Fiscal Year 2015 (FY 2015). Under the terms of the contract, KOCO was slated to receive grant funds up to $100,000 from IDHS. The purpose of this grant was to establish services for participating youth through the IDHS Summer Jobs Program, and KOCO received $100,000 in IDHS grant funds for operation of that program. KOCO also received an additional $55,350 in grant funds under contract No. FCSTRO3240 for continuing to operate a community youth after school mentoring program. This resulted in KOCO receiving a total of $155,350 in grant funds from IDHS under contract Nos. FCSTRO3681 and FCSTRO3240 in FY 2015. As a result of the FY 2012 through FY 2015 grant awards, KOCO received IDHS grant funds under contracts and amendments of at least $451,198.

¶ 11                              2. Illinois Auditor General Audit Findings

¶ 12    On Apri 17, 2015, the Office of the Illinois Auditor General (OAG) was directed by the Illinois House of Representatives to conduct a performance audit of state funds provided to KOCO in fiscal years 2010 through 2015. The OAG audit report was issued in May 2017 and found that IDHS inadequately monitored the majority of funding provided to KOCO from FY

2010 through FY 2015. Specifically, the OAG audit found that both KOCO and IDHS provided limited documentation to the auditors to support whether grant program objectives were met for many of the programs that state grants were issued for and how KOCO used state funds during the audit period. The OAG audit determined that during the audit period of FY 2010 through FY 2015, IDHS issued grants to KOCO totaling $1,214,010, and made findings based on the auditors' review of KOCO's ledgers and other documentation provided during the process, detailed more specifically below.

¶ 13    The OAG audit found that KOCO declined the auditors' request to review its full general ledger. Instead, KOCO provided only the portions of its general ledger that included the receipt of state funds, which the OAG audit found listed expenses that exceeded the amount of state grant funds that KOCO received. As a result, the OAG audit concluded that KOCO's general ledger for state grant accounts included revenue from non-state grant sources and it was unable to determine the amount of state grant funds spent versus non-state funds spent.

¶ 14    The OAG audit also determined that many of the supporting documents provided to the auditors were in conflict, including a finding that the portions of KOCO's general ledger that the auditors were permitted to review did not match KOCO's budgets or actual expense documents. The audit indicated that this precluded the auditors from determining if KOCO's financial reporting system resulted in accurate, current, and complete disclosure of all financial transactions, which was an express provision set forth and required by KOCO's grant contracts with IDHS.

¶ 15    As such, the OAG audit was unable to determine how all grant funds to KOCO were used for the IVPA Special Project Program in FY 2012 because of conflicting documentation received by the auditors. Specifically, the OAG audit could not determine if the purposes of

the $75,000 IVPA Special Project grant for FY 2012 received by KOCO was met or that KOCO had a valid cost allocation plan for staff salaries, so such costs were properly allocated to the FY 2012 IVPA Special Project grant. The OAG also found that the FY 2012 IVPA Special Project program performance goals were not achieved and KOCO had no system in place to monitor documentation demonstrating improvement in the academic performance of program participants. The OAG further concluded that it could not determine how KOCO used all funds from an additional FY 2012 IVPA Safety Net Works (SNW) grant of $30,067 due to KOCO's conflicting documentation.

¶ 16        The OAG audit also found that the portion of KOCO's general ledger submitted for review did not contain a recording of the expenses KOCO claimed on its closeout report, specifically finding that KOCO's partial general ledger contained expenses in different amounts than those listed in KOCO's budget and closeout report. For example, the OAG audit found that KOCO reported receiving $25,000 in IVPA SNW grant funds, when KOCO actually received $30,067 in such funds. By recording IVPA SNW program expenses of $25,126 in its general ledger, the OAG audit concluded that this was an example of how KOCO failed to account for how it spend the other $4941 in IVPA SNW grant funds. Further, with respect to the IVPA SNW grant funds, the OAG audit found that the majority of those funds were spent for the expense of a KOCO employee and contracted services for youth stipends. However, the section of KOCO's general ledger provided to the auditors for review omitted employee names for payroll/benefit expenses. Thus, OAG could not determine which employee's payroll/benefit expense was charged to the FY 2012 IVPA SNW grant program.[2] The OAG audit further found

---

[2]On January 25, 2013, pursuant to Public Act 97-1151 (eff. Jan. 25, 2013), all IVPA staff, functions and funds were transferred to the Illinois Criminal Justice Information Authority.

that KOCO's general ledgers recorded nearly $13,000 less in expenses than invoices that it issued to Northeastern Illinois University.

¶ 17 In examining the FY 2013, 2014, and 2015 IDHS Community Youth Employment (CYE) grants that KOCO received, the OAG audit concluded that it was unable to determine how $377,424 of the $500,325 grant funds received were spent because the documents that KOCO provided lacked consistency between amounts allocated in KOCO's budgets, listed in its closeout reports, and recorded in the portions of the general ledgers that the auditors were allowed to review. The OAG audit also found insufficient evidence of supervisor review of program participant time sheets, frequently missing signatures on the time sheets, and discrepancies in total work hours reported on time sheets.

¶ 18 Further, the OAG audit found that KOCO's receipt of grants from FY 2010 through FY 2015 for a Supplemental Nutritional Assistance Program (SNAP) employment and training federally funded program totaling $474,801 was inadequately monitored by IDHS. The audit could not determine whether program participants met the 80-hour monthly participation minimum and whether KOCO placed the required number of participants in unsubsidized employment. There were also missing performance and fiscal monitoring documents for three other IDHS grant funded programs during the audit period, namely the Teen REACH, IVPA Special Project, and American Recovery and Reinvestment programs. Due to limited information provided to the auditors by KOCO for the IDHS grant funds received, the OAG audit found that the documentation obtained did not provide a reasonable basis to address the audit purpose of determining how KOCO actually used state funds, nor whether KOCO's use of the funds met the programmatic purpose of such grants.

¶ 19      For FY 2014 and FY 2015, the OAG audit found that KOCO did not provide the required annual financial reporting packet to IDHS, and due to KOCO's failure to provide sufficient documents, the auditors could not determine if KOCO met its requirements under its grant contracts with IDHS for the FY 2010 through FY 2015 audit period. Nor could the OAG audit determine whether KOCO met the purpose of the state grants it received and its actual use of all state funds because the auditors were unable to determine KOCO's staffing levels, management compensation, and whether KOCO was in compliance with applicable laws, regulations, contracts, and agreements related to its receipt of IDHS state grant funds.

¶ 20      The OAG audit recommended that IDHS review the monitoring exceptions identified in KOCO's audit in order to ensure that processes were in place to properly monitor grant programs, and IDHS accepted the recommendation. The OAG audit also recommended that IDHS review issues identified in the final audit report and determine whether repayment of any funds was necessary due to unsupported or unallowed expenditures, and IDHS accepted the recommendation.

¶ 21      The OAG audit also recommended that the Illinois Criminal Justice Information Authority (ICJIA) should review issues identified in the final audit report and determine whether repayment of any funds was necessary due to unsupported or unallowable expenditures. The ICJIA concurred with the recommendation.

¶ 22                            3. Hearing Notice

¶ 23      On September 21, 2018, the BCSS, within IDHS FCS, issued KOCO an informal notice of informal hearing intent to recover (informal notice) regarding disallowed expenses based on the OAG's audit review. The informal notice listed the expenses that BCSS found were disallowed and sought recovery for FY 2011 through FY 2015. The informal notice also listed

the disallowed expenses by office/program and lapse amount, totaling $501,369. The informal notice offered KOCO the opportunity to discuss and exchange information related to such recovery by submitting a written request for an informal hearing to the BCSS.

¶ 24    KOCO subsequently requested an informal hearing with BCSS, which occurred on November 30, 2018. Prior to the adjournment of the hearing, KOCO requested and was granted additional time to provide additional documents and records to the BCSS. However, on February 15, 2019, KOCO's counsel sent a letter raising objections to the informal notice. No additional documents or records were included with KOCO's letter, despite its request to submit, which was allowed at the informal hearing.

¶ 25    On March 14, 2019, the BCSS issued a formal notice of intent to recover grant funds (formal notice), which listed the grant funds the BCSS sought to recover for FY 2011 through FY 2015 by program, amounts paid, verified amount, and recovery amount. The formal notice recovery amount totaled $501,369 and offered KOCO the opportunity for a formal hearing if it submitted a written request in writing within 45 days to the BCSS. On March 25, 2019, KOCO appealed the BCSS's formal notice with the IDHS BOH by requesting a hearing.

¶ 26                    4. Administrative Evidentiary Hearing

¶ 27    After multiple prehearing conferences and litigated pretrial motions, ALJ Dickman conducted an evidentiary hearing on October 14, October 20, October 26, November 10, and December 1, 2021, and February 10, 2022, which was recorded via Cisco Webex. On November 10, 2021, IDHS withdrew its intent to recover grant funds from KOCO for FY 2011 totaling $38,945, which reduced the amount of grant funds sought to be recovered by IDHS to $462,424 for FY 2012 through FY 2015. The ALJ issued his recommended decision on July 19, 2022, and it is summarized below.

¶ 28                                  a. Witness Testimony

¶ 29                                  i. Brian Malone

¶ 30       Brian Malone testified on behalf of KOCO that he was KOCO's executive director from 2012 until December 2020. Malone stated that a majority of the IDHS grants received by KOCO were used to fund various youth programs from 2011 through 2015. Those programs included the 2011 Summer Youth Employment, Put Illinois to Work, and Job Start programs. The programs' collective purposes were to engage youth in productive activities, develop job skills, and obtain jobs. Because the IDHS's September 21, 2018, informal notice did not list a grant or check number, Malone stated that he could not determine what records IDHS wanted in support of KOCO's previously claimed and allowed expenses, and IDHS would not tell them. Malone further testified that the 2017 OAG audit did not find that any claimed expenses submitted to IDHS were disallowed. Malone then detailed specific programs related to each fiscal year covered by the informal notice as follows.

¶ 31       In 2011, KOCO submitted time sheets and check stubs for employees assigned to work on the first two programs listed in the IDHS's informal notice, which were two programs run by the Alternative Schools Network. Malone stated that the second program was funded by an IDHS grant of $22,500, and at the time, those program expenses were not disallowed. He did not recall how the documentation was submitted but stated that the Alternative Schools Network contracted with IDHS for those two programs and KOCO was not required to do anything. According to Malone, the third program referenced in the informal notice for FY 2011 was an Illinois Department of Commerce and Economic Opportunity program, titled the Job Start Program. Proof of costs were submitted to IDHS, which were allowed.

¶ 32    The fourth program referenced in the informal notice was a FY 2012 grant from the IVPA for a program working with the Passages agency. Malone stated that IDHS never gave KOCO proof that KOCO received the $75,000 grant or a grant number and KOCO's claim for costs to be reimbursed was not disallowed.

¶ 33    For the FY 2013 CYE Program grant of $198,784, Malone testified that IDHS did not provide a grant number or proof that KOCO received such funds. Nor did IDHS provide grant numbers and checks proving that KOCO received the FY 2014 and FY 2015 CYE program grants, thus it could not furnish additional documentation for allowed expenses of those programs and IDHS did not respond to KOCO's request for more specificity. Malone indicated that KOCO employed program participants in the FY 2015 CYE program that was funded by a $47,667 grant whose program expenses were allowed. He noted that on page two of the formal notice, IDHS indicated that $122,891 of expenses for CYE programs for FY 2013 through FY 2015 were verified, but IDHS did not state how the expenses were verified.

¶ 34    Malone testified that he reviewed the August 13, 2013, and August 14, 2014, annual fiscal review letters and final reports, issued by the IDHS Office of Contract Compliance representative, which stated that KOCO was in compliance with IDHS requirements. However, he acknowledged that the FY 2014 report found that KOCO's allocation practices did not provide for a fair and reasonable distribution of indirect costs. Malone stated that KOCO did not receive any of the IDHS work materials for those fiscal reviews during the formal hearing proceedings.

¶ 35    Malone testified to examples of KOCO's record keeping during the applicable time period and admitted that its recordkeeping was less than perfect. However, Malone stated that IDHS could see that KOCO implemented programs as intended and there was no intent to stonewall.

¶ 36    On cross-examination, Malone testified that his duties with KOCO from 2004 to 2012 were as a housing organizer before becoming executive director. As executive director, Malone's duties were fundraising, working with the KOCO board, training staff, and insuring that KOCO complied with its duties under its grant contracts. Malone further stated that KOCO's duties under its IDHS grants also required it to comply with generally accepted accounting principles (GAAP). However, KOCO's accounting system between 2010 and 2015 was composed of two different systems that tracked revenue and expenses, but no separate ledger was kept for each grant. Malone stated that a chart of accounts was kept and a general ledger that tracked all revenue and expenses for KOCO, and it was the bookkeeper's duty to maintain those items. The bookkeepers physically entered revenues and expenses in KOCO's books and records, and an outside audit was performed each year between 2010 and 2015, which produced a written report that was reviewed by Malone, the board of directors and the bookkeepers. Malone testified that he alone reviewed the bookkeeper's work, he compared bank reconciliation statements to the agency checkbook, and he reviewed documents that were sent to the auditors.

¶ 37    Malone further testified that KOCO's record retention policy was to store bookkeeping records and supporting documents for allowable grant expenses in perpetuity in file cabinets or storage boxes on site. However, Malone acknowledged that due to the age of the records, it was possible that some records were misplaced or something else could have happened to them. Malone also stated that while documentation for the programs listed in the informal notice were turned over to the OAG for their audit, some may have been water damaged. When Malone left KOCO in December 2020, to the best of his knowledge, those documents were returned to KOCO and were still in KOCO's possession, but he did not review the returned records, and if any documents were missing, he was not responsible. Malone did acknowledge,

however, that during his tenure, he was ultimately responsible for keeping the records and the record retention policy.

¶ 38      Malone further admitted that KOCO's 2011 contract with the Passages agency was unclear as to which program grant the contract applied to and omitted the name of the program grant. However, he knew that program grant funds were used to pay KOCO's staff working with the program participants. Malone acknowledged discrepancies in the KOCO contract with Passages and could not definitively state that the contract was connected to an IDHS grant but indicated that it was submitted to the OAG as a supporting document for the audit. Malone also acknowledged that some of the weekly review forms for program participants had discrepancies or missing information such as which grant funded the participants' wages. He further acknowledged that it was unclear from viewing payroll withholding forms if the forms were for a KOCO employee or what grant the wages were charged to and paid from. While Malone identified several documents, he was unable to state whether all of them were submitted as supporting documentation for the OAG audit, which grant funded the programs, or whether the expenses were entered into KOCO's general ledger. He further acknowledged that some time sheets had the same signature on both the employee and supervisor signature lines, some check request forms did not list hours worked, payrate, which grant they applied to or other supporting documents, and that those incomplete documents were submitted to IDHS for reimbursement from the grant funds.

¶ 39      Malone acknowledged that the IDHS fiscal review of KOCO IDHS issued on August 11, 2014, found that KOCO's cost allocation practices did not provide for a fair and reasonable

distribution of indirect cost.[3] He stated that KOCO's practice was to allocate 90% of all expenses to programs and 10% to management, and he worked with the bookkeeper and an outside entity to revise the allocation plan. Malone could not recall the total number of IDHS Summer Employment Youth grants that KOCO received from 2011 to the present but was aware of other grants that KOCO received during the applicable period. Malone acknowledged his prior testimony that KOCO's recordkeeping was less than perfect and that there were holes in the records. He justified KOCO's failure to produce its full general ledger by stating that it produced the documents in support of items recorded in the general ledger, which included reports generated from accounting software.

¶ 40    Malone also indicated that he reviewed the OAG's audit report and acknowledged that KOCO did not turn over its full general ledger to the auditors and stated that the Illinois House resolution was false as KOCO worked with the OAG to comply with its requests. He further stated that the OAG report stated that KOCO produced records "as best as it could" and also found fault with IDHS. However, Malone acknowledged that the OAG found that KOCO did not provide the auditor with all of the required program participant work time sheets, specifically 130 time sheets for FY 2013, 47 time sheets for FY 2014, and 165 time sheets for FY 2015. He was unsure if the time sheets introduced into evidence at the hearing were the same as those provided to the OAG. Finally, Malone acknowledged that the OAG found that of the $503,325 in IDHS Community Youth Employment funds received in FY 2013 through FY 2015, KOCO submitted sufficient documentation to verify grant expenses equal to $122,901 but was unsure how the OAG calculated its numbers.

---

[3]The fiscal review revealed that excess grant funds were allocated to management rather than to program costs.

¶ 41    On redirect examination, Malone restated his testimony that IDHS signed off on KOCO's records and reports during the 2011 through 2015 grant period in its fiscal reviews, and the 2014 fiscal review of KOCO's practices yielded only a recommendation, and further that no reimbursement costs were disallowed during the applicable grant periods. Malone stated that the informal notice and later the formal notice were the extent of written communication that KOCO received from IDHS, IDHS did not inform KOCO of the documents it relied on to reimburse KOCO's program costs during each year, and the supporting documentation provided for cost reimbursement requests was not returned to KOCO. Malone felt that it was unfair that IDHS did not return KOCO's supporting documents or respond to KOCO's requests for additional information regarding the recovery notices. Malone did, however, identify an e-mail from KOCO's attorney dated March 25, 2019, requesting a formal hearing with IDHS.

¶ 42                            ii. Shannon Bennet

¶ 43    Shannon Bennet, KOCO's current executive director, testified that he had been employed at KOCO since 1991, was familiar with KOCO's business practices, and recalled the IDHS grants that KOCO received from FY 2012 through FY 2015. During that time, Bennet was KOCO's point person in securing summer job opportunities for at least 1000 youth in the community. Bennet stated that KOCO had to hire more employees to staff the IDHS grant funded programs; KOCO housed the programs while other employers provided the employment. Bennet testified that because of the nontraditional home life of many program participants, perfect recordkeeping was difficult, and he echoed Malone's testimony that during the applicable time period, IDHS checked KOCO's records and had no issues, as noted in the fiscal reviews. Bennet stated that he and other staff had primary responsibility for KOCO's records and would have made changes if requested by IDHS. Bennet acknowledged

that IDHS raised an issue concerning how KOCO allocated salary costs to KOCO's program grants but was unaware of any other claims regarding record keeping or grant allocation before he became executive director. Bennet believed that the Illinois House resolution calling for the audit was politically motivated—State Representative Mautino introduced the bill for the resolution, which was co-sponsored by State Representative Christian Mitchell. According to Bennet, KOCO official J. Travis ran against Mitchell in an electoral race, and Mautino subsequently became the OAG and signed off on the KOCO audit.

¶ 44    On cross-examination, Bennet testified that he did not have direct responsibility for accounting functions for IDHS grant funding, rather, his direct responsibility included the time sheets and paychecks for the program youth, and he did not personally do any bookkeeping. Bennet did not recall ever reviewing accounting ledgers but indicated that KOCO still had all of the records from 2012 through 2015 and could provide them. He further acknowledged that the program youth were not at fault for KOCO's recordkeeping challenges and that it was KOCO's responsibility to keep accurate records, to follow GAAP, and to keep records at least five years after the end of the grant term. Bennet reiterated that KOCO had all of the records related to IDHS grants between FY 2012 and FY 2015 and that it was open and willing to cooperate with showing files and documents related to the state grants. Like Malone, Bennet testified that KOCO allowed the auditors to view records but did not provide its general ledger to the auditors. He stated that KOCO as an organization made the decision not to provide its general ledger or chart of accounts, even though they were requested by the auditors, because it was clear that the investigation was politically motivated and not based on wrongdoing by KOCO. Despite this, Bennet maintained that KOCO cooperated with IDHS's investigation as to how the grant funds were spent and produced documents for the IDHS informal hearing

although he could not identify them because he did not participate in the informal hearing. Bennet was also unaware of whether each IDHS grant had its own separate account in KOCO's general ledger but believed that KOCO's records showed that all grant funds were properly accounted for.

¶ 45 On redirect examination, Bennet again stated that serving at-risk or undocumented youth made maintaining perfect records difficult, and believed that Representative (and subsequently Deputy Governor) Mitchell was the reason for KOCO's investigation due to his status. On recross, Bennet clarified that KOCO never employed any undocumented youth in any IDHS grant-funded program in FY 2012 through FY 2015.

¶ 46                                         iii. Martin Fruchtl

¶ 47 Martin Fruchtl, the Bureau Chief of the Bureau of Policy and Review, Office of Contract Administration for IDHS FCS, testified that he was employed with IDHS since 1994, and Bureau Chief since July 2021. He testified that he was not involved in the decision to seek grant recovery from KOCO and did not attend the informal hearing in 2019 between KOCO and IDHS. However, Fruchtl reviewed the OAG's report regarding KOCO and its findings. He stated that he was never contacted by anyone from the OAG, Christian Mitchell, or their staff; he was only contacted about the case by Ryan Cannon, assistant general counsel from the IDHS Office of General Counsel.

¶ 48 Fruchtl testified that KOCO received grant funds of $22,059 for FY 2012 as shown on the IDHS vendor contact summary report, and identified the program used to generate the report from the State of Illinois/IDHS CARS[4] accounting system, which records voucher payments

---

[4]CARS is not defined in the record.

to payees as part of regularly paying grantees during the course of a fiscal year. Fruchtl used those records for his auditing and verification of grant recovery job duties and stated that those reports could be generated for any IDHS grant recipient and were identical to reports used as exhibits in the hearing. Fruchtl also testified that contract numbers for grants were assigned after execution of the contract; the "CARS Approp" number was also part of the CARS accounting and payment system; the program category described the grant and grant activity on the vendor contact summary report; the contract amount was the total amount awarded by the grant; the expended amount was the sum paid out of the grant as of the date of the report; and the balance was any remaining unpaid grant funds. Fruchtl identified several reports related to grants that KOCO received from IDHS: a report from FY 2012 showed a $22,059 grant with a zero balance and similar reports for FY 2013, FY 2014 and FY 2015.

¶ 49    On cross-examination, Fruchtl acknowledged that he did not have firsthand knowledge about who personally generated the reports that he was shown by IDHS counsel, nor did he personally review the underlying source documents or voucher approvals for such reports, stating that those functions were not done by his office. He stated that he did not have access to the CARS accounting system, did not create the underlying source documents, and did not know the staff member who entered the data in the system. Fruchtl stated that he relied solely on the accounting program and report for the information he testified to contained in the KOCO IDHS vendor contact summary for FY 2012 through FY 2015 and vendor voucher detail grant reports. However, he did not review check copies paid to KOCO and did not talk with IDHS official Hector Tellez.

¶ 50    On redirect examination, Fruchtl testified that IDHS annually oversaw approximately 3000 grants, that the Office of Contract Administration is not part of the IDHS FCS division, and

that reviewing contracts for all IDHS departments was part of his duties. On recross-examination, Fruchtl stated that he could not testify to the number of IDHS grantees audited annually by IDHS, but that statutory requirements provided authority for such audits to occur. He testified that he was unaware of any prior IDHS audits of KOCO and did not know if IDHS official Ellen King conducted such audits.

¶ 51                                    iv. Hector Tellez

¶ 52        Hector Tellez, a regional administrator for IDHS BCSS since 2006, testified that an IDHS fiscal review was a review of how grant funds received by a grantee were used. Tellez testified that he was involved in other fiscal reviews prior to the fiscal reviews of KOCO. Tellez stated that he was familiar with KOCO as an IDHS grantee for several years as well as other grantees in the region. After the 2017 OAG audit of KOCO, he was assigned by his supervisor, Bureau Chief Frederick Nettles, to conduct a follow up review of KOCO's grant provisions for FY 2011 through FY 2015. Tellez reviewed the OAG's audit report and testified that it criticized IDHS for its oversight and monitoring of KOCO as the audit found that KOCO's grant fund spending lacked adequate supporting documentation.

¶ 53        As a result, and after consulting with Bureau Chief Nettles, Tellez initiated grant recovery from KOCO by issuing IDHS BCSS's September 21, 2018, informal notice of intent to recover grant fund expenses previously paid to KOCO. That notice also informed KOCO of its right to an informal hearing, and an informal hearing was conducted by telephone conference on November 30, 2018, which Tellez and Nettles attended. KOCO's executive director, Malone, and KOCO's attorney also attended. At the conclusion of the hearing, KOCO requested to submit additional grant cost documentation, such as its general ledger, chart of accounts, and additional receipts, to show how its FY 2011 through FY 2015 grant funds were spent.

¶ 54    Tellez stated that KOCO's general ledger should show income received and costs expended, while a chart of accounts should identify expenses and list categories for such expenses. He indicated that a general ledger differs from a bank statement because it identifies sources of income, how costs are charged to identified accounts, and how grant funds are distributed to programs funded by those grants. Receipts or invoices would show the purpose of a particular expense and also confirm that the proper share of a cost was allocated to the proper account. Tellez stated that they usually cross checked receipts or invoices against the general ledger, but without the general ledger, they would be unable to conduct a meaningful review of the program costs claimed by a grantee.

¶ 55    At the informal hearing, Tellez and Nettles asked KOCO to allow IDHS to review its general ledger for the subject period. KOCO did not provide its general ledger, nor did it subsequently provide any additional documents besides its February 15, 2019, letter challenging the informal notice before IDHS's March 14, 2019, formal notice was issued. If KOCO had provided its general ledger, chart of accounts, or other documents, Tellez stated that IDHS would have reviewed such items, and if such items showed how grant funds were spent in accord with the terms of the grants, it would reduce the amount sought to be recovered. To his knowledge, KOCO had not provided its general ledger or chart of accounts as evidence in the formal hearing either. Tellez further stated that he was not contacted by Deputy Governor Mitchell, his staff, or any other legislator, auditor general staff, or staff from the Governor's office about this case.

¶ 56    Tellez further testified that for the IDHS FY 2012 grant with KOCO, contract administration and contract obligation documents were generated that formalized the grant under contract number 011GQO2163 for $22,059. The purpose of that grant was to establish

an after school mentoring program through the IVPA, and it was signed off by IDHS's Michelle Landers on March 8, 2012. The contract was generated in the ordinary course of IDHS business like all IDHS grants, and he relied on the information in those contracts to complete his job duties. Tellez stated that a community service agreement (CSA) was also generated that established the parties' rights and duties under the grant contract. The CSA was signed by Mr. Travis on behalf of KOCO on January 27, 2012, and Landers on behalf of IDHS on February 1, 2012. Tellez indicated that on page five of the FY 2012 CSA, standards and duties were set forth, including KOCO's duty to establish and maintain an accurate accounting system as shown by its general ledger and to maintain proper source documentation matching its general ledger. Article 14, page 79 of the CSA contained an express duty for KOCO to maintain accessible records for at least five years after the end of a fiscal year. If an audit occurred, KOCO was required to maintain records from the audit period until all audit issues were resolved. Section 14.2, page 80 of the CSA indicated that KOCO was expressly required to make all records available to the OAG and IDHS and to fully cooperate with those entities. Section 13.3 provided that the failure to produce adequate records created a presumption that a grantee failed to maintain such records.

¶ 57        Tellez testified that similar administration and obligation documents were completed and executed for the grant agreements between KOCO and IDHS for grants that KOCO received for FY 2013, FY 2014, and FY 2015. FY 2014's grant was titled a "Summer Youth Employment" grant. Each of the documents for those fiscal years was signed by KOCO's Executive Director Malone. Documents titled "Contract Encumbrance and Contract Obligation" were also generated for FY 2013, FY 2014 and FY 2015. Those documents were

grant documents generated in the ordinary course of IDHS business, and Tellez relied on their contents to complete his job duties.

¶ 58    KOCO's accounting duties were set forth in the CSA for every applicable fiscal year in the financial management section, including those applicable to KOCO's accounting system, records disclosure, and general ledger, and further provided that source documentation must match KOCO's general ledger. Tellez reiterated that under the CSAs, KOCO had a duty to maintain and allow access to records and maintain final payment-related records for at least five years and audit records until such audit issues were resolved. Additionally, the CSA detailed further recordkeeping duties related to the Inspector General and IDHS and contained a presumption in favor of grant recovery if KOCO failed to adequately maintain records.

¶ 59    Tellez indicated that the fiscal reviews conducted by the IDHS Office of Contract Compliance, on August 13, 2013, and August 11, 2014, were different than the fiscal reviews conducted by his office. The IDHS Office of Contract Compliance addressed governance of grantees, as well as a grantee's policy and procedures. In contrast, Tellez stated that the review conducted by his Bureau focused on income, expenditures, and delivery of program services. He further stated that his review was also different than an audit conducted by the OAG, which focused on expenditure testing, in addition to how grant income was spent. Neither the August 2013 nor August 2014 fiscal reviews conducted by the Office of Contract Administration addressed how grant funds were spent or whether grant funds should be recovered.

¶ 60    On cross-examination, Tellez acknowledged that he spoke to KOCO's attorney, Mr. Persoon, on multiple occasions in recent years, but stated that he believed that he should limit his talks with Mr. Persoon to the items listed in IDHS's formal notice. Prior to the issuance of the formal notice, Tellez stated that he solely spoke about the case with Bureau Chief Nettles.

IDHS requested that KOCO provide more information and documents within a certain time frame. In response, KOCO offered to provide documents, other than the general ledger, chart of accounts, or other expense receipts. Tellez further stated that it was his bureau's general practice to review a grantee's practices every three years, and although he did not recall exactly when KOCO's review occurred, it was before 2014, and no problems or issues arose from that review.

¶ 61 Tellez stated that he provided a copy of a February 15, 2019, letter from KOCO's attorney to Bureau Chief Nettles. He did not review source document information from the OAG but reviewed documents that KOCO submitted and reached no conclusion from those documents because KOCO did not submit its general ledger for review. Tellez acknowledge that the OAG report did not state that it was disallowing any KOCO costs but stated that the report was unable to determine whether the purpose of the American Recovery and Reinvestment Act of 2009 (Pub. L. No. 111-5, 123 Stat. 115 (2009)) program was met due to damaged records. He also acknowledged that when the informal notice was issued, the OAG had not disallowed any KOCO costs, nor did he recall the exact number of people who attended the informal hearing. Tellez reiterated that additional documents were verbally requested from KOCO at the informal hearing including its chart of accounts, additional invoices and receipts, and agreed that those types of documents from KOCO may have satisfied their request. Tellez stated that prior to the issuance of the informal notice, IDHS did not review any of KOCO's documents or speak to anyone conducting the OAG audit.

¶ 62 Tellez stated that IDHS initiated the recovery process due to the recommendations of the OAG audit report which specifically recommended that IDHS review the report and pursue appropriate recovery of grant funds. He first reviewed the OAG report in June 2018 even

though it was issued in May 2017. Tellez further stated that he did not discuss politics with his Bureau Chief Nettles and acknowledged KOCO's belief that the grant recovery effort was politically motivated; however, it was his supervisor that had final authority to initiate the grant fund recovery process, and it typically took approximately 18 months from receiving the notice of an irregularity until a formal notice was issued. In this case, based on the OAG's recommendation, Tellez did recommend that IDHS initiate the grant recovery process. Tellez again acknowledged that IDHS requested source documentation from KOCO at the informal hearing, but IDHS did not seek a court order requiring KOCO to turn over its general ledger. He could not say what the OAG did to prepare its audit report, the accuracy of its findings or why it made those findings. He was also not present with King when she issued KOCO's August 2013 and August 2014 fiscal review letters as he was not involved in that fiscal review process.

¶ 63        On redirect exam, Tellez stated that he believed there had been a prior review of KOCO by the IDHS/FCCS Division that he did not participate in. Nor did he believe that the letter from KOCO's attorney provided any meaningful information to determine the recovery of KOCO grant funds. Tellez stated that his Bureau did not have investigatory or document production power and could not investigate KOCO's political theory. If IDHS did not voluntarily receive requested documents from a grantee, the Bureau could only place the grantee on a "Do not pay" list, and if the grantee still refused to produce the requested documents, the Bureau had no other recourse to obtain the documents sought. Tellez reiterated that the OAG found that KOCO did not produce certain requested documents, the OAG report recommended that IDHS review issues identified regarding KOCO and determine if any repayment of funds was necessary, and that the grant recovery process followed with KOCO

was the same process followed for other grantees. Tellez noted that the OAG audit outlined the scope and reasons for the OAG audit and that IDHS encumbrance documents were not proof of grant fund payments. Tellez also reiterated that he was not part of the 2013 and 2014 fiscal reviews of KOCO done by Ms. King from the IDHS Office of Contract Compliance, noting that although their office followed a similar process as that office, those fiscal reviews examined different items from a grantee than what his office did. Further, Tellez stated that it was not possible to meaningfully review a grantee without their general ledger, even if the grantee provided supporting documents for various expenses because the general ledger showed how expenses were allocated to and across grant funds and would allow them to determine if the proper share of an expense was properly allocated to grant funds.

¶ 64        On recross-examination, Tellez acknowledged that the OAG did not find KOCO's grant funds were disallowed.

¶ 65                                b. Evidentiary Documents Submitted

¶ 66        In support of its position, IDHS submitted the following exhibits:

> "Exhibit 1: March 14, 2019, letter to Brian Malone from Hector Tellez
> Exhibit 2: September 21, 2018, letter to Brian Malone from Hector Tellez
> Exhibit 3: November 13, 2018, letter to Michael Persoon from Hector Tellez
> Exhibit 4: FY 2011 Contract Obligation Document between KOCO and IDHS
> Exhibit 5: FY 2012 Contract Obligation Document between KOCO and IDHS
> Exhibit 6: FY 2013 Contract Obligation Document between KOCO and IDHS- Job Placement
> Exhibit 7: FY 2013 Contract Obligation Document between KOCO and IDHS- Teen Reach
> Exhibit 8: FY 2014 Contract Obligation Document between KOCO and IDHS
> Exhibit 9: FY 2015 Contract Obligation between KOCO and IDES
> Exhibit 10: FY 2011 Contract Summary IDHS-KOCO
> Exhibit 11: FY 2011 Voucher Detail IDHS-KOCO
> Exhibit 12: FY 2012 Contract Summary IDHS- KOCO
> Exhibit 13: FY 2012 Voucher Detail IDHS-KOCO

Exhibit 14: FY 2013 Contract Summary IDHS-KOCO
Exhibit 15: FY 2013 Voucher Detail IDHS-KOCO
Exhibit 16: FY 2014 Contract Summary IDHS-KOCO
Exhibit 17: FY 2014 Voucher Detail IDHS-KOCO
Exhibit 18: FY 2015 Contract Summary IDHS-KOCO
Exhibit 19: FY 2015 Voucher Detail IDHS-KOCO
Exhibit 20: Auditor General's Report: Performance Audit of the State Moneys Provided to the Kenwood Oakland Community Organization; May 2017."

¶ 67        In support of its position, KOCO submitted the following exhibits:

"Exhibit 1: Internal itemization of funds by FY
Exhibit 2: 2011 agreement with vendor
Exhibit 3: GYCY youth review forms
Exhibit 4: June 2012 Summer Youth Employment Timesheets
Exhibit 5: July 2012 Summer Youth Job Sheet
Exhibit 6: July 2012 Youth Check Receipt Sheet
Exhibit 7: July 2012 Youth Payroll Summary
Exhibit 8: Backup reference to Ex 7 of 2012 Payroll
Exhibit 9: Program Costs
Exhibit 10: Program Costs
Exhibit 11: Program Plan
Exhibit 12: Aug 2012 Youth Timesheets
Exhibit 13: July 2012 GCYC Youth Timesheets
Exhibit 14: 2012 Summer Jobs Applications
Exhibit 15: July 2012 GCYC Timesheets
Exhibit 16: 2012 Summer Job Applications
Exhibit 17: Aug 2012 Youth Timesheets
Exhibit 18: July 2012 Youth Timesheets (IPL)
Exhibit 19: FY 2013-14 Program Plan
Exhibit 20: FY 2013-14 Narrative Report
Exhibit 21: Certain Agreement Docs
Exhibit 22: Youth Applications
Exhibit 23: July 2013 Youth Timesheets
Exhibit 24: Youth Applications Program Costs
Exhibit 25: Provider Agreements
Exhibit 26: Program Costs
Exhibit 27: July 2013 Youth Timesheets
Exhibit 28: July 2013 Youth Check Receipt Sheet
Exhibit 29: July/August 2013 Program Costs

Exhibit 30: KOCO Report to IDHS re "summary expenditure documentation" for Youth Employment June 2013-June 2014
Exhibit 31: Youth Employment Checks from Comptroller July 2013
Exhibit 32: CYEP Corr dated June 19, 2014
Exhibit 33: CYEP Checks from Comptroller August 2014
Exhibit 34: CYEP Expenditure Ledger July-Sept 2014
Exhibit 35: July 2014 Youth Timesheets
Exhibit 36: Program Costs 2014
Exhibit 37: Youth Paystubs Sept 2014
Exhibit 38: Youth Payroll/Time Oct-Nov 2014
Exhibit 39: Fall 2014 ADP Payroll Register (Youth)
Exhibit 40: July 2012 Youth Payroll Requests
Exhibit 41: Aug 2013 audit letter from Ellen King
Exhibit 42: August 2014 audit letter from Ellen King
Exhibit 43: July 2012- June 2013 Misc. Ledger
Exhibit 44: July 2014- July 2015 Misc. Ledger
Exhibit 45: July- August 2012 CGYC Youth Timesheets
Exhibit 46: Corr e Teen REACH plan and budget, related ledger
Exhibit 47: Put Illinois to Work narrative/ASN MOU
Exhibit 48: July 2012 Youth Timesheets
Exhibit 49: OAG Report
Exhibit 50: Informal Notice Corr
Exhibit 51: Informal Notice Corr
Exhibit 52: HR 324
Exhibit 53: Cooke v. Illinois State Bd. Of Elections
Exhibit 54: Misc Corr."

¶ 68    The parties also submitted written closing arguments after the close of evidence: "Petitioner's Closing Argument, Exhibit Compilation and Reply, [and] Department Closing Argument.

¶ 69            c. Conclusions of Law and Recommended Administrative Decision

¶ 70    After hearing testimony and reviewing all of the documentary evidence submitted by KOCO and IDHS, the ALJ made conclusions of law and issued his recommended administrative decision.

¶ 71     The ALJ first noted that the IDHS BCSS issued its formal notice to KOCO on March 14, 2019, and KOCO's request to appeal the notice of intent to recover was sent to the BOH on March 25, 2019.

¶ 72     The ALJ then noted the applicable statutory provisions to the matter were set forth in the Illinois Administrative Code (Code) and the Act, and under those provisions, the grantee has the burden of proof to show cause why no recovery should occur. See 89 Ill. Adm. Code 511.40(h) (2008); 30 ILCS 705/8(c)(1) (West 2022). Further, the Act authorized the IDHS to recover grant funds awarded to an agency grantee (30 ILCS 705/1 *et al*. (West 2022)), and sets forth the accounting requirements to apply, receive and use grant funds from state agencies (*id.* § 4(b)). Additionally, the Act established criteria, grantor agency duties and recovery methods to recover grant funds (*id.* § 6).

¶ 73     The ALJ summarized KOCO's position as follows. While admitting that its financial recordkeeping was less than perfect during the time period that it received IDHS grants, KOCO claimed that it properly operated such grant programs and kept proper records of program costs reimbursed by IDHS. Further, the 2015 OAG audit was caused by an agency opponent, which detracted from the reliability of the audit's findings and recommendations; despite requests from the OAG during the audit and IDHS during its informal review for KOCO to disclose its full general ledger for review of its grant accounting practices, KOCO chose not to do so and should not be punished for its election not to disclose such records. Additionally, KOCO claimed that the documents submitted during the OAG audit and admitted in evidence during the evidentiary hearing sufficiently met its contractual and statutory grant recipient duties.

¶ 74     The ALJ summarized IDHS's position as follows: it contended that KOCO committed a litany of contractual and statutory violations as shown by KOCO's pattern of submitting

incomplete or absent cost documentation and by not maintaining the required financial costs accounting methods and systems. Moreover, KOCO's contractual and statutory violations were evident by its failure to disclose its full general ledger and other accounting records during the OAG audit process, during the OAG recommended IDHS cost review, or during the evidentiary hearing. As a result, IDHS asserted that such acts, omissions, and financial record nondisclosure by KOCO conclusively compelled recovery of such costs paid by IDHS to KOCO.

¶ 75     The ALJ noted that during the evidentiary hearing, IDHS reduced the amount of paid program costs it sought to recover from KOCO from $501,369 in its informal notice to $462,424, electing not to seek recovery of FY 2011 costs paid of $38,945. The ALJ found that the unrebutted testimonial and documentary evidence established that IDHS/FCS awarded KOCO grants to operate its programs and KOCO's receipt of payment for its claimed costs in operating those programs from FY 2012 through FY 2015, for a total of at least $451,198. Specifically, the ALJ found that unrebutted evidence supported that amount via the Vendor Voucher Detail and the Vendor Contract Summaries as follows:

"FY 2012 and FY 2013 program costs- IVPA Special Project After School Program $75,000
FY 2013 program costs- IVPA Teen REACH program $10,000
FY 2014 program costs- Community Youth Jobs Employment, IVPA Teen REACH and Temporary Assistance to Needy Family (TANF) programs $210,848
FY 2015 program costs- Community Youth After School and Summer Jobs Employment programs $155,350."

¶ 76     Additionally, the Code specifically states that the failure to maintain adequate records to document the expenditure of IDHS funds creates a presumption in favor of the Department for the recovery of the funds under law. 89 Ill. Adm. Code 509.40(d) (2024). The ALJ found that although IDHS asserted that the recovery amount was $462,424, the preponderance of the

evidence established $451,198 as the amount of total costs that IDHS paid KOCO for costs it incurred for the programs in FY 2012 through FY 2015 as identified in both IDHS's informal and formal notices.

¶ 77    With respect to Malone's testimony, the ALJ found that Malone's assertion that the informal notice did not identify a grant or check number with the programs in the notice, which did not provide sufficient proof to KOCO that it actually received the FY 2012 $75,000 grant for operating the IVPA program, was rebutted by a plethora of documentary and testimonial evidence, including Malone's own subsequent testimony that KOCO received payment of it program costs for the relevant time period. The ALJ noted that Malone conceded that KOCO's recordkeeping was less than perfect and that "there were no less than 50 separate instances of testimony elicited from Mr. Malone of potential or actual accounting and fiscal irregularities conflicting with KOCO's contractual and statutory grant record accounting duties." For example, Malone acknowledged or admitted to certain recordkeeping lapses related to KOCO's statutory or contractual duties; that he had primary responsibility for KOCO's compliance with its grant duties, recordkeeping, and record retention; and that documents were unexplainably missing after the OAG audit. The ALJ found that these admissions squarely conflicted with KOCO's express fiscal duty imposed under the Code and the grant agreements themselves. Under both the Code and the grant agreements, KOCO was to maintain all records for at least five years after the fiscal year that the records applied to, or until unresolved audit issues or litigation were completely resolved, and KOCO was to maintain summary documentation by line item of actual expenses incurred. Further, the ALJ found that Malone's admission also raised the presumption for recovery of costs purportedly paid and documented by such potentially missing records, which also further implicated a breach of KOCO's

inspection duties under the Act, specifically KOCO's duty to permit IDHS and OAG to inspect and audit records related to KOCO's grant-funded programs and the use of such funds.

¶ 78     The ALJ also found that missing records further conflicted with KOCO's duty under the Code that KOCO be managed consistent with sound fiscal standards and with internal controls in accord with GAAP. He concluded that the missing cost records made it impossible, or extremely difficult, to determine if KOCO spent grant funds for costs in accord with the parties' grant agreements, which if it did not, were expressly recoverable under the Code. The ALJ also noted Malone's inability to recall who replaced the longtime bookkeeper for the approximate one-and-a-half year period in 2015-16 during the ongoing OAG audit. The ALJ noted that the replacement bookkeeper was likely tasked with duties related to the audit and likely worked on potential unresolved audit or document production/retention issues for KOCO until such audit issues were completely resolved as required by the Code.

¶ 79     The ALS further noted that Malone was shown a list of program participants from the week of July 23, 2013, which was introduced by KOCO as evidence to support its claim that it kept proper records. Malone admitted that the list omitted the grant that the participants' wages were charged to, programs they participated in, the author of the list, or if such list was submitted to IDHS in support of a reimbursable cost. Malone also testified that the procedure that KOCO followed for reimbursement of its program costs included completing and submitting expense documentation forms (EDFs) to IDHS. However, Malone could not recall any documents submitted with the EDFs to support IDHS reimbursement to KOCO for its purported April 14 through July 20, 2014, program costs. Nor could he say if copies of checks issued to pay its FY 2014 program expenses were retained by KOCO. The ALJ found that those admissions by Malone further implicated KOCO's duties under its grant contracts, which

required that KOCO's accounting records contain information as to "outlays," supported by expense source documentation, such as cancelled checks. Additionally, the ALJ noted that such admissions regarding KOCO's lack of source documentation for payment of program expenses conflicted with its core duties under the Code, which required that accounting transactions were adequately documented and that records of expenses were maintained, which further supported presumptive recovery under the Code.

¶ 80    The ALJ also noted other admissions by Malone that constituted direct evidence of KOCO's breach of its contractual and statutory duties as a grantee that received state grant funds. Malone acknowledged the OAG audit found that only $377,424 of the $500,325 in IDHS CYE grant funds that KOCO received for FY 2013 through FY 2015 were expended, resulting in $122,901 in unaccounted funds. He also acknowledged that (1) the OAG audit team did not receive time sheets for KOCO program participants for those fiscal years and (2) IDHS's fiscal year review of KOCO in FY 2014 found KOCO's method for allocating its indirect costs operating its indirect costs was not fairly and reasonably distributed because KOCO charged 90% of all programming expenses to those programs and could not recall what changes were made to allocating program costs in light of such finding. The ALJ pointed to other instances of Malone's inability to recall multiple details regarding many expenses, programs, and program accounting. Noting that while arguably excusable due to the passage of time of such programming, the ALJ nonetheless found Malone's pervasive lack of recall to be further evidence that KOCO breached the statutory and contractual accounting standards required by the Code. Additionally, the ALJ noted that Malone had no choice but to acknowledge a time sheet, which KOCO itself put in evidence, that had the same signature on both the employee and supervisor lines. The ALJ further pointed to evidence showing that

KOCO's employment applications and tax withholding forms omitted the grant an employee's wages were charged to and the total wages earned by employees. The ALJ opined that Malone was also "compelled" to acknowledge KOCO's deficient recordkeeping, which detracted from such documents' core reliability to support specific, legitimate program costs. The ALJ pointed to 29 deficient documents with significant omissions that further degraded the quality of evidence that KOCO submitted in an attempt to meet its statutory burden to prove cost recovery was not warranted; all of which provided further evidence that KOCO breached the statutory and accounting standards required of grantees that receive state funds. Malone also admitted that KOCO did not follow GAAP in its recordkeeping despite it being required by the IDHS grants, nor did KOCO provide its general ledger for review, which was an express duty mandated by statutory authority and the grant contracts. As such, the ALJ concluded that KOCO's admitted refusal to act in accordance with its duty to disclose such records at any time to IDHS or the OAG, combined with KOCO's witnesses admitting to dozens of recordkeeping and operational deficiencies, was "profoundly troubling" and such refusal was direct evidence that KOCO violated its express terms of its grant contract to permit inspection of the accounting cost records for such grants.

¶ 81    The ALJ also evaluated Bennet's testimony in summary, noting that he testified that KOCO had difficulty in keeping perfect grant program records and that program participants frequently forgot to request verification of time sheets from supervisors or to submit the time sheets to KOCO. Bennet corroborated Malone's admission that IDHS's 2014 fiscal year review found that KOCO's method for allocating its indirect costs for operating IDHS programs failed to fairly and reasonably distribute the allocation of salary costs. Bennet also admitted that as executive director, he had ultimate responsibility for IDHS program time sheets and paychecks

but maintained the OAG audit was politically motivated. Contrary to Malone, Bennet testified that KOCO had all grant program records from FY 2012 through FY 2015 and could provide them, and he acknowledged KOCO's duty to keep accurate records, as the grants were taxpayer funds, and to follow GAAP. Bennet did not attend the informal hearing but admitted that KOCO declined to provide its general ledger to OAG during the audit. He did not know if KOCO's general ledger contained separate accounts for each grant program or whether KOCO's chart of accounts were disclosed to the OAG, despite it being his responsibility.

¶ 82     The ALJ concluded that Bennet's testimony offered little or no evidence to counter the "tsunami of deficiencies in Malone's testimony," which chronicled "extensive missing, incomplete, and inapplicable financial or other program records which KOCO was contractually and statutorily bound" to properly keep in documenting the significant costs that IDHS paid to KOCO from FY 2012 through FY 2015. The ALJ specifically found that KOCO's fiscal recordkeeping clearly breached the express terms of its grant agreements, the Code, and the Act, and further that evidence failed to counter, let alone overcome, the IDHS's "substantial, significant evidence" that was admitted at the hearing of KOCO's multiple grant term, Code, and Act violations. As such, KOCO fell short in meeting its evidentiary burden to show why recovery should not occur.

¶ 83     The ALJ then summarized the IDHS's witness testimony from the hearing, which he found further supported recovery of grant costs paid to KOCO for FY 2012 through FY 2015 due to its breach of recordkeeping and disclosure duties. Additionally, the ALJ noted that although KOCO agreed to submit additional grant documentation at the conclusion of its initial informal hearing, they nevertheless elected not to submit the full general ledger or supporting documentation. Rather, KOCO sent a letter challenging the OAG recommended cost review,

without providing any meaningful information that would assist with determining whether or not costs were sufficiently documented; thus, such costs remained subject to recovery. There was no evidence impeaching Tellez's testimony that, if KOCO had provided other documentation to support the proper spending of grant funds, then the amount sought in recovery would have been reduced, nor was any evidence presented by KOCO to substantiate its claim that the OAG audit was a form of political retaliation against KOCO.

¶ 84    The ALJ noted that the express language in the IDHS informal notice was that "[s]tate law required the IDHS take necessary steps to assure collection or resolution of expenses disallowed based on the review conducted by the [OAG] from July 2015 to November 2016. The following amounts were disallowed." The ALJ also pointed out that the notice did not state that OAG did not disallow KOCO's expenses or that IDHS sought to recover expenses disallowed by OAG; rather, the notice stated that IDHS acted to collect or resolve expenses it was disallowing as a result of the OAG audit review. Second, the ALJ found that KOCO's refusal to disclose its full general ledger to OAG during the audit compelled IDHS to initiate such collection or resolution of costs paid to KOCO after the OAG's findings in order for IDHS to comply with its duties under the Act. The OAG audit report exhaustively detailed recordkeeping failures, source document deficiencies, and KOCO's refusal to disclose its full general ledger, which, along with the OAG's recommendation that IDHS review whether repayment of any funds was necessary due to unsupported or unallowable expenses triggered IDHS' duty to determine if there were misspent grant funds and to initiate grant fund recovery pursuant to the Act.

¶ 85    The ALJ noted that the Code provides four factors to determine grant costs that IDHS could reimburse. Section 509.20(a)(1) requires that reimbursed costs must be "[n]ecessary and

- 35 -

related to the provision of program services; *** [r]easonable to the extent that a given cost is consistent with the amount paid by similar agencies for similar services; *** [n]ot specified in subsection (b) of this Section as not reimbursable; and *** [n]ot illegal." 89 Ill. Adm. Code. 509.20(a)(1), adopted at 24 Ill. Reg. 18137 (eff. Nov. 30, 2000). Section 509.20(a)(2) requires that all "expenses that can be identified to a specific Department-funded program shall be charged directly to that program. Expenses not directly identifiable to a Department-funded program shall be allocated to all benefitting programs, both Department-funded and other programs." *Id.* § 509.20(a)(2). KOCO's refusal to provide its general ledger made it impossible to confirm, as Tellez testified that all of KOCO's claimed costs were charged in the general ledger to the grant program KOCO claimed such costs were incurred for, as mandated by section 509.20(a)(2), and such nondisclosure of its full general ledger further degraded KOCO's claim that it kept proper financial records and delivered all activities and programs it contracted to provide pursuant to its grant contracts. Further, the Act provided that grant contracts were required to mandate that KOCO disclose to IDHS and the auditor general any books, records, or papers related to the program, project, or use of state grant funds, which KOCO breached by failing to disclose its full general ledger to the OAG or IDHS, and such nondisclosure made it also impossible to discern if KOCO honored its certification required by the Act. The ALJ again noted that KOCO had the burden to overcome the deference required to IDHS's decision that the full general ledger and chart of accounts was necessary to conduct a proper review of KOCO's cost accounting system. The evidence presented at the evidentiary hearing of KOCO's financial cost irregularities and noncompliance with governing statutory and contractual requirements was overwhelming and clearly supported IDHS request of KOCO's full general ledger and chart of accounts to determine if its accounting system

complied with GAAP and that its cost transactions were properly classified, documented, recorded, and posted monthly to the full general ledger. The ALJ noted that IDHS's evidence was unrebutted by KOCO as evidence of KOCO's failure to comply with the Code and supported finding cost recovery warranted.

¶ 86 The ALJ concluded that there was a deluge of evidence submitted by IDHS to the OAG and subsequently in the record of the hearing of KOCO's insufficient accounting and cost support documentation compilation, collection, and recording systems. Such evidence established a presumption in favor of recovery pursuant to multiple provisions as detailed under the Code and Act, with an additional presumption on KOCO to show cause why no recovery should occur. Further, the ALJ found that the record overwhelmingly established that the evidence submitted by KOCO to attempt rebuttal of those presumptions when weighing all evidence was wholly insufficient to meet or rebut the evidence compiled by the OAG and IDHS triggering the operative statutory and contractual presumptions. The ALJ rejected KOCO's claim that IDHS withheld exculpatory evidence in the hearing by not disclosing the cost claim forms/service delivery reports that KOCO submitted to IDHS which supported payments to KOCO for its programming between FY 2012 and FY 2015, noting that by definition, since those documents were previously submitted to IDHS, they were already in KOCO's possession, and they could have submitted them as support for its claims.

¶ 87 The ALJ also found that KOCO's claim that the OAG audit was an act of political retaliation was wholly unsupported by any probative evidence during the hearing, which resulted in the claim being conjecture and without merit. Accordingly, the ALJ concluded that IDHS acted properly in initiating the recovery process for $451,198 under the Act.

¶ 88    The ALJ filed his report and recommendations with IDHS concerning KOCO's request to appeal the IDHS BCSS notice to recover grant funds. The secretary of IDHS, Grace Hou, adopted the entire record of the proceedings including the recommendations of the ALJ's report. The secretary issued a final recovery order upholding IDHS's decision to recover costs from KOCO grants for FY 2012 through FY 2015. The final recovery order included language that it was a final administrative decision, and an appeal could be made to the circuit court within 35 days.

¶ 89                               B. Administrative Review

¶ 90    KOCO filed its complaint for administrative review in the circuit court of Cook County on August 22, 2022, against IDHS and Secretary Hou. KOCO sought review of the final agency action, contending that there were errors of law, mixed questions of law and fact, and procedural irregularities. KOCO also requested that IDHS file a transcript of the evidence and entire administrative record with the circuit court. KOCO challenged IDHS's decision on the following bases: (1) the decision was contrary to the law where KOCO rebutted the statutory presumption in the Code and IDHS thereafter failed to establish that any funds were misspent or withheld; (2) the decision was based on inadmissible hearsay in the form of the OAG auditor report that lacked foundation and the reliance on which manifestly affected KOCO's rights and worked substantial injustice; (3) the informal notice was based on the false premise that any of the grant monies issued to KOCO had been disallowed; (4) the decision was flawed because IDHS switched the basis for recovery from the informal notice to the formal notice; (5) the decision was contrary to extensive evidence admitted by KOCO substantiating its use of grant funds including compiled exhibits such as ledger reports, vendor agreements, time sheets, youth job applications, job sheets, receipts, narrative reports submitted contemporaneously to

IDHS, paystubs, payroll registers, and payroll requests; (6) the decision was flawed as KOCO was denied its right to exculpatory evidence in the form of all "cost claiming forms and/or service delivery reporting" that was reviewed by IDHS as stated in the formal notice such that KOCO would be provided "the specific facts that permit recovery" as required by law; (7) the ALJ refused to rule on KOCO's motion to dismiss including that IDHS failed to follow its own mandatory rules regulating the recordkeeping of grantees like KOCO; namely that it should have been provided with an opportunity to "submit a corrective action plan" rather than face nearly $500,000 in liability for recordkeeping deficiencies as opposed to misuse of funds; (8) the ALJ refused to rule on KOCO's motion to dismiss claiming that it had complied with the terms of its implied in fact contract as to its recordkeeping with IDHS and that IDHS was prevented from subsequently demanding different recordkeeping requirements; and (9) while the hearings were conducted under the authority of the Act, the decision was based on breach of contract rather than on breach of statute. KOCO requested that the circuit court reverse the IDHS decision.

¶ 91　　　The circuit court issued its order and final judgment on May 14, 2024, denying KOCO's complaint for administrative review and affirming IDHS's final administrative decision. The circuit court then entered final judgment against KOCO for $451,198 in favor of IDHS and its secretary designate, Dulce Quintero (substituted for former Secretary Hou). The order also indicated that the hearing was recorded, although no transcript is included in the appellate record.

¶ 92　　　KOCO filed its notice of appeal on June 11, 2024.

¶ 93　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 94 On appeal, KOCO contends that the circuit court erred (1) in upholding the final administrative action and (2) entering judgment in the amount of $451,198 against KOCO.

¶ 95 However, because this is an appeal from administrative decision, we do not review the circuit court's decision. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847 (2007). Rather, our review is governed by the Administrative Review Law. See 735 ILCS 5/3-101 to 3-113 (West 2022). On review from an administrative review proceeding, this court reviews the decision of the administrative agency, which in this case is IDHS. *PepsiCo, Inc. v. Department of Revenue*, 2025 IL App (1st) 230913, ¶ 26.

¶ 96 A. Standard of Review

¶ 97 The applicable standard of review concerning an administrative agency's final decision depends on whether the question presented is one of fact, one of law, or a mixed question of law and fact. *Id.* ¶ 34. The factual determinations of an administrative agency are *prima facie* true and correct. *Id.* ¶ 35. An administrative agency's decisions on questions of fact are entitled to deference and are reversed only if against the manifest weight of the evidence. *Id.* An administrative agency's decisions on questions of law are not afforded deference and thus are reviewed *de novo*. *Id.* ¶ 36. Mixed questions of law and fact, which involve the application of law to a particular set of facts, are subject to review under the clearly erroneous standard, which lies somewhere in between manifest weight of the evidence and *de novo*, allowing deference to an agency's experience and expertise. *Id.* ¶ 37.

¶ 98 B. Relevant Statutory Provisions

¶ 99 There are several provisions of the Act (30 ILCS 705/1 *et seq.* (West 2022)) as well as the Code (89 Ill. Adm. Code 509, 511) that are applicable to the merits of this appeal.

¶ 100       Section 4 of the Act governs the "Grant Application and Agreement Requirements." 30 ILCS 705/4 (West 2022). Subsection (a) provides that any person or organization desiring to receive state grant funds must submit a grant application to the applicable agency. *Id.* § 4(a). Subsection (b) provides that grant funds may not be used except pursuant to a written grant agreement, which, at minimum, must describe the purpose of the grant; specify how payments shall be made and what constitutes permissible expenditures of the grant funds; indicate the financial controls applicable to the grant; state the period of time for which the grant is valid; contain a provision that any grantees receiving grant funds are required to permit the grantor agency, the Auditor General, or the Attorney General to inspect and audit any books, records, or papers related to the program, project, or use for which grant funds were provided; contain a provision that all funds remaining at the end of the grant agreement or at the expiration of the period of time grant funds are available for expenditure or obligation by the grantee shall be returned the State within 45 days; and contain a provision in which the grantee certifies under oath that all information in the grant agreement is true and correct to the best of the grantee's knowledge, information, and belief, that the funds shall be used only for the purposes described in the grant agreement, and that the award of grant funds is conditioned on such certification. *Id.* § 4(b).

¶ 101       Section 6 of the Act governs the recovery of grant funds. That section provides that any grant funds that have been misspent or are being improperly held are subject to recovery by the grantor agency that made the grant or, alternatively, by the Attorney General, and that the grantor agency making the grant shall take affirmative and timely action to recover all misspent or improperly held grant funds. *Id.* § 6.

¶ 102        Section 7 of the Act governs the informal hearing process and provides that whenever a grantor agency believes that grant funds are subject to recovery, the grantor agency shall provide the grantee the opportunity for at least one informal hearing to determine the facts and issues and to resolve any conflicts as amicably as possible before taking any formal recovery actions. *Id.* § 7.

¶ 103        Section 8 of the Act governs the formal procedures for recovery of grant funds. Subsection (a) provides that if a grantor agency determines that certain funds are to be recovered, then prior to taking any action to recover such funds, the agency shall provide the grantee a written notice of the intended recovery, which shall identify the funds and the amount to be recovered and the specific facts which permit recovery. *Id.* § 8(a). That section further provides that a grantee has 35 days to request a hearing to show why recovery is not justified or proper, the grantor agency shall hold a hearing at which the grantee may present evidence and witnesses to show why recovery should not be permitted, and after the conclusion of the hearing, the grantor agency shall issue a written final recovery order and the grantee may seek judicial review of any final recovery order under the Administrative Review Law. *Id.* § 8(b)-(d).

¶ 104        Section 9 of the Act provides that the Attorney General may act to recover any grant funds that have been misapplied or are being improperly held and may use all the powers of collection to do so. *Id.* § 9. Section 11 of the Act governs accounting requirements and provides that each grantee is under an affirmative duty to keep proper, complete, and accurate accounting records of all grant funds the grantee administers. *Id.* § 11.

¶ 105        Several Code provisions operate in tandem with the Act.

¶ 106        Part 509 of the Code governs fiscal and administrative recordkeeping and requirements for agencies that receive grant funds from IDHS and provides minimum standards for such

recordkeeping. See 89 Ill. Adm. Code 509.10, adopted at 24 Ill. Reg. 18137 (eff. Nov. 30, 2000). Section 509.20 governs allowable and unallowable costs for grant funds. See *id.* § 509.20. Section 509.30 governs fiscal requirements/management of agencies and provides, among other things, that the agency (grantee) must demonstrate internal controls that are consistent with any generally accepted accounting principles (GAAP). *Id.* § 509.30(a). Section 509.40 governs the accounting requirements for grantees receiving funds from IDHS and provides very specific requirements for such grantees: (1) agencies shall establish and maintain a financial system in accordance with GAAP and establish and maintain their own financial systems or contract with a fiscal agent; (2) financial transactions shall be properly classified, adequately documented, supported, and recorded in appropriate books of original entry (journals) and posted to general ledgers on a monthly basis; (3) for programs funded by IDHS, expenses shall be recorded by specific program, with shared expenses allocated between IDHS-funded programs and programs funded from other sources according to a written cost allocation plan and methodology and it is the grantee's responsibility to document its program expense allocation method and rationale; (4) all financial records and supporting documents shall be retained for at least five years after the end of the fiscal year to which they relate or until the resolution of any audit issue or litigation is completely resolved; and (5) the failure to maintain adequate records to document the expenditures of IDHS funds creates a presumption in favor of IDHS for recovery of the funds. 89 Ill. Adm. Code 509.40(a)-(d) (2024). Section 509.70 of the Code governs fiscal and administrative reviews of grantees, which includes a responsibility for grantees to make all records available to IDHS or its designee that are necessary to complete the review. *Id.* § 509.70. When the IDHS fiscal/administrative review

results in findings that merit correction, the grantee shall be notified in writing and given the opportunity to submit a corrective action plan. *Id.* § 509.70(c).

¶ 107        Part 511 of the Code governs grants and grant funds recovery. Section 511.10 of the Code provides that all funds disbursed by IDHS on a grant basis are subject to reconciliation and the recovery of lapsed funds based on the Act by (1) comparing the eligible expenditures to the total grant revenues by program or (2) comparing actual eligible services delivered to the services projected in the contract. 89 Adm. Code 511.10 (2002). Section 511.30 of the Code governs the criteria for the recovery of funds, providing that grant funds shall be subject to recovery if IDHS finds that the grant funds received by the grantee are determined to be subject to recovery under section 511.10, were not spent in accordance with the grant agreement, or were not expended or legally obligated by the expiration of the grant. 89 Ill. Adm. Code 511.30(a) (2000). Section 511.40 of the Code sets forth the process for recovery of grant funds in accordance with the process outlined in the Act. 89 Ill. Adm. Code 511.40 (2008).

¶ 108                                           C. The Merits

¶ 109        The issue before this court is whether IDHS properly determined that KOCO failed to rebut the statutory presumption for grant funds recovery based on KOCO's violations of the grant agreements, the Act, and the Code with respect to proper maintenance of its financial records in accordance with GAAP, including maintaining such records for specified periods of time and allowing the inspection of its books on request of IDHS, the OAG, and/or the Attorney General. The question of whether KOCO rebut the statutory presumption of recovery is a question of law, which we review *de novo*. *Cronholm v. Board of Trustees of the Lockport Fire Protection District Firefighters' Pension Fund*, 2016 IL App (3d) 150122, ¶ 12. As noted

above, under the *de novo* standard, little or no deference is given to the decision-maker's ruling. *Express Valet*, 373 Ill. App. 3d at 847.

¶ 110    In Illinois, a rebuttable presumption creates a *prima facie* case of the particular issue involved. *Lipscomb v. Sisters of St. Francis Health Services, Inc.*, 343 Ill. App. 3d 1036, 1041 (2003) (citing *Lehman v. Stephens*, 148 Ill. App. 3d 538, 551 (1986)). Illinois recognizes the "bursting bubble" theory regarding presumptions. *In re Estate of Lewis*, 193 Ill. App. 3d 316, 319 (1990). Under that theory, if the underlying facts that give rise to the presumption are established, a burden is placed on the party against whom the presumption operates to put forth the evidence to rebut the presumption. *Id.* If sufficient rebuttal evidence is presented, the presumption vanishes. *Id.* The determination as to the sufficiency of the rebuttal evidence is a determination for the court to make. *Id.* at 320.

¶ 111    In this case, the presumption is created under title 89, section 509.40, of the Code, which governs the accounting requirements for grantees who receive funds for IDHS. That section explicitly states that the "[f]ailure to maintain adequate records to document the expenditure of DHS funds creates a presumption in favor of the Department for recovery of the funds." 89 Ill. Adm. Code 509.40(d) (2024). That presumption is based on the grantee's affirmative duty to keep proper, complete, and accurate accounting records of all grant funds that the grantee administers under the Act. 30 ILCS 705/11 (West 2022). Here, KOCO's duty as a grantee was also fully set forth in the various grant agreements between the parties. Consistent with caselaw on rebuttable presumptions, the Code states that the grantee has the burden of proof to show cause why no recovery should occur. 89 Ill. Adm. Code 511.40(h) (2008). Thus, the analysis here must consist of two steps: (1) whether grantee kept appropriate records, and (2) if not, whether grantee demonstrated cause why no recovery of grant funds should occur.

¶ 112   Our supreme court in *Franciscan Sisters Health Care Corp. v. Dean*, 95 Ill. 2d 452, 463 (1983), held that the evidence required to rebut a presumption "is not determined by any fixed rule" but that "[i]f a strong presumption arises, the weight of the evidence brought in to rebut it must be great." If no evidence is introduced to the contrary, then the *prima facie* case created under the presumption will prevail and the agency would be entitled to judgment as a matter of law. *Lipscomb*, 343 Ill. App. 3d at 1041.

¶ 113   KOCO argued below, and argues in this appeal, that absent a finding that grant funds were misspent or unlawfully withheld, there can be no liability under the Act and that all of the IDHS grant funds were used primarily for youth programming. That is simply not true based on the plain language of the grant contracts and the statutory provisions referenced above. KOCO's argument rests on its assertion that because the IDHS contract compliance annual fiscal reviews found no issues and none of its grant costs were disallowed during the applicable time period, IDHS could not subsequently seek recovery of grant funds. This argument appears to confuse the difference between the IDHS contract compliance fiscal reviews, the OAG audit, and BCSS fiscal reviews, all of which served separate and distinct functions, as testified to by Tellez at the administrative hearing, Thus, the findings of one department's review does not obviate the need for or findings of another department's review or audit, as in this case.

¶ 114   Further, we note that KOCO does not argue or imply that the annual fiscal reviews conducted by the contract compliance department could not be superseded by the findings of a subsequent audit, as happened here. It should also be noted that KOCO makes no argument concerning the impact of its deficient recordkeeping on its responsibilities under the Code or that such deficiencies are what create the presumption under the Code.

¶ 115    In this case, the evidence presented at the hearing, particularly from KOCO's own witnesses, conclusively established that KOCO failed to comply with its affirmative duty under the Act to keep proper, complete, and accurate accounting records of all grant funds received from IDHS.

¶ 116    Malone, who was KOCO's executive director during the fiscal years impacted by the OAG audit and subject to grant funds recovery, testified that KOCO received payment of its program costs from IDHS grant funds for the relevant time periods. He indicated that it was his job to oversee the bookkeeper, review the annual audit report, and to ensure that KOCO complied with its duties under its grant contracts. Malone also testified that KOCO's recordkeeping was "less than perfect" and there were numerous instances elicited during his testimony of potential or actual accounting and fiscal irregularities that conflicted with KOCO's statutory and contractual accounting duties. Malone further admitted that documents were unexplainably missing, there were issues with the program participants' time sheets in that they did not reflect the applicable grant program and had missing signatures or even the same signature for the employee and the supervisor. Malone acknowledged in his testimony that KOCO did not properly document the use of grant funds in joint programming with other agencies but submitted such paperwork in support of reimbursement and for the OAG audit. Malone was unable to recall who replaced KOCO's long-term bookkeeper during the time that the audit took place between 2015 and 2016, how program costs were supported for IDHS reimbursement (*i.e.* copies of checks), or what type of supporting documentation was sent to IDHS for reimbursement. Malone acknowledged that a document from the week of July 25, 2013, which was submitted by KOCO to support its claim that it kept proper records, failed to list the grant that the participants' wages were charged to, the programs they participated in,

the author of the list, or if such list was submitted for reimbursement. Malone also acknowledged that the OAG audit found that only $377,424 of the $500,325 in IDHS grant funds received by KOCO were spent, resulting in $122,901 in unaccounted funds; that the OAG audit team did not receive time sheets for KOCO program participants for those fiscal years; and IDHS's contract compliance fiscal review for FY 2014 found irregularities as to how grant funds were allocated, but Malone could not recall how those irregularities were corrected. Malone also admitted that employment applications and withholding forms had missing information and that KOCO did not follow GAAP in its recordkeeping despite the grant requirement. Most notably, Malone admitted that KOCO refused to provide its general ledger for review, despite it being an express duty under the grant agreements as well as the Code (see 89 Ill. Adm. Code 509.70 (2024)), based on its belief that the audit was politically motivated. Even after the informal hearing, which occurred while Malone was still the executive director, KOCO did not submit additional supporting documentation or its general ledger for review, despite requesting leave to submit such documentation.

¶ 117     Bennet, KOCO's subsequent executive director, also testified to KOCO's inadequate bookkeeping, stating that perfect recordkeeping was difficult due to the nontraditional home life of many of the program participants. Contrary to Malone's testimony, Bennet testified that KOCO had all of the records from 2012 through 2015 and could provide them and that KOCO was open and willing to cooperate with showing files and documents related to the grants. Bennet also admitted that KOCO refused to provide its general ledger based on its belief that the audit was politically motivated but still believed that KOCO cooperated with IDHS's investigation as to how the grant funds were spent.

¶ 118       Neither Malone nor Bennet were able to confirm if each IDHS grant had its own separate account in KOCO's general ledger, and Malone testified that no separate ledger was kept for each grant. Additionally, of the 54 exhibits submitted as evidence at the administrative hearing, not one was the general ledger for the applicable time period. Thus, it appears uncontroverted that KOCO failed to maintain adequate records to document expenditure of IDHS funds. Upon establishing this fact, the presumption that IDHS can recover funds is triggered. The grantee then has the burden to prove why recovery is not appropriate or should not be ordered.

¶ 119       IDHS witness Tellez testified that a general ledger should show income received and costs expended and that a chart of accounts should identify expenses and list categories for such expenses. Tellez stated that a general ledger differed from a bank statement in that it identified sources of income, how costs are charged to identified accounts, and how grant funds are distributed to the various programs funded by those grants. Additionally, receipts or invoices would show the purpose of expenses and confirm that the proper share of a cost was allocated to the proper account. Tellez stated that, in their document review, they usually checked receipts/invoices against the general ledger; however, without the general ledger, they would be unable to conduct a meaningful review of the program costs claimed by a grantee.

¶ 120       That is the crux of the matter here. While KOCO claims that it properly used IDHS grant funds for its programming and that it maintained proper records despite some "recordkeeping lapses," as it describes them, KOCO tacitly refused to provide the main document that could settle the recordkeeping dispute- the general ledger. It is clear that KOCO's decision not to submit its general ledger for review, despite its contractual and statutory obligation to do so as confirmed by its own witnesses, adversely affected its attempts to rebut the statutory presumption of grant funds recovery. KOCO's failure to submit its general ledger for review

unfortunately precluded the OAG and subsequently IDHS from conclusively determining whether the grant funds were properly used for KOCO's programming in accordance with the Act (30 ILCS 705/6 (West 2022)) and the Code (89 Ill. Adm. Code 511.30 (2000)). The supporting evidence submitted, replete with mistakes and omissions, was woefully inadequate to allow for meaningful review or to prove that the grant funds were spent in accordance with the grant agreements as required by the Code. We find that KOCO's evidence at the administrative hearing was insufficient to burst the statutory presumption's bubble where it failed to establish that KOCO complied with its affirmative duty regarding its recordkeeping under the Act. As such, we must conclude that KOCO failed to rebut the statutory presumption of grant funds recovery as a matter of law.

¶ 121      We further find that KOCO's argument that it was denied due process lacks merit. The basis for recovery in both informal and formal notices is set forth in the grant contracts and the Code and is directly based on KOCO's noncompliance with its affirmative duty to maintain proper records or submit its general ledger for review. The informal notice sought $501,369 for recovery from FY 2011 through FY 2015, while the formal notice sought $462,424 for recovery from FY 2012 through FY 2015.

¶ 122      We further reject KOCO's argument that IDHS failed to follow its own rules and provide KOCO with an opportunity to correct its recordkeeping as that argument is directly rebutted by the record. The informal hearing process is what allows the parties the opportunity to resolve any conflicts amicably prior to any formal grant funds recovery. See 30 ILCS 705/7 (West 2022). During the informal hearing, KOCO requested an opportunity to submit additional documentation, which IDHS granted. However, instead of submitting such documentation, KOCO instead sent a letter challenging the informal notice. Thus, it was KOCO who failed to

take advantage of the applicable time period to correct deficiencies in its recordkeeping or submit appropriate documentation to rebut the amount sought in grant funds recovery by IDHS.

¶ 123     Further, we find that KOCO's assertion that the record did not justify the judgment for $451,198 is meritless. As noted above, the amount initially sought for recovery was $462,424 at the formal hearing, which was reduced from the amount sought in the informal hearing notice ($501,369) based on IDHS's decision not to seek recovery of FY 2011 costs paid. The judgment amount was based on the program costs for fiscal years 2012 through 2015 as provided in the record.

¶ 124     We also find that KOCO's argument that the audit was politically motivated was unsubstantiated. The lone allegation that one of its members campaigned against a member of the legislature, Mitchell, is not enough. Moreover, such political influence raises a separate claim and does not alleviate the grantee's affirmative duty to keep proper records or to comply with requests to view its records, including the general ledger. This is especially so where the duty was imposed pursuant to grant contracts and statutory provisions under the code that were independent of such political influence.

¶ 125     We emphasize that, under the Code as it relates to grant recovery, programming compliance is wholly separate from financial compliance as it relates to grant funds—one solely looks at usage of such funds while the other looks at the documentation of that use and requires very specific recordkeeping for compliance. That said, our decision is not meant to in any way diminish the many positive contributions that KOCO has made to its community and the many youth positively impacted by its programming. However, all IDHS grantees, regardless of the significance of its programming to the community, must comply with the

terms of their grant agreements, as well as their requirements and duties under both the Code and the Act.

¶ 126                                                 III. CONCLUSION

¶ 127        For the foregoing reasons, we find that KOCO failed to rebut the statutory presumption in favor of grant funds recovery as a matter of law. As such, we affirm the final decision of IDHS against KOCO and find it liable to repay $451,198 in grant funds that were previously allowed.

¶ 128        Affirmed.

***Kenwood-Oakland Community Organization v. Department of Human Services*,
2026 IL App (1st) 241238**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-08236; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Thomas H. Geoghegan, Michael P. Persoon, and Will Bloom, of Despres, Schwartz & Geoghegan, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Maura Forde O'Meara, Assistant Attorney General, of counsel), for appellees. |